UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LARRY WILLARD, et al.,

        Plaintiffs,

   v.

CITY OF EVERETT, et al.,

        Defendants.

C12-14 TSZ

ORDER

THIS MATTER comes before the Court on defendants' motion for summary judgment, docket no. 34. Having reviewed all papers filed in support of and in opposition to the motion, and having considered the oral arguments of counsel, the Court enters the following Order.

**Background**

This case concerns the shooting death of Dustin Willard by Everett police officers on November 8, 2008. In the early morning, one of Willard's neighbors heard noises coming from Willard's house and called 911 to report a possible burglary in progress. Shortly after 1:44 a.m., members of the Everett Police Department ("EPD"), including Stephen Harney, Aaron Showalter, and Sunny (Radosevich) Taylor, responded to the scene.

After arriving at Willard's residence, Taylor and another officer scouted along the fence surrounding the back yard. They heard a dog barking and heard a male voice give

ORDER - 1

commands to the dog.  They were unable to see over the fence or ascertain how many individuals might be inside the house, and they decided not to attempt to make contact. Meanwhile, Harney and Showalter took positions to the left of the front porch.  Taylor passed by Harney on her way toward the perimeter of the front yard.  She told Harney she could see mud smear marks on the front door; the marks were consistent with someone trying to kick in the door.  Harney made a similar observation.

Taylor placed herself behind a utility pole; from this vantage point, she could see the front of the house and was able to read the address numbers.  Having ascertained the address, Taylor asked a dispatcher to find a telephone number for the residence.  Almost instantaneously, Harney either rang the doorbell or knocked on the front door.  The front door opened and Willard stepped onto the front porch, holding a shot gun at an angle, with the barrel pointed up.  Harney aimed his weapon at Willard and shouted, "Police. Drop the gun."  Taylor simultaneously yelled "gun" several times.  Willard lowered the barrel of his shot gun in Harney's direction and brought the stock of the firearm to his shoulder as though he was preparing to fire.  Harney and Showalter began moving backwards in an effort to put distance between them and Willard.  As they did so, Taylor started firing her weapon.  Harney and Showalter also shot at Willard.  Willard died at the scene.

Willard's father, mother, and brother initiated this action against City of Everett, Harney, Showalter, and Taylor, alleging three claims:  (i) unconstitutional use of excessive force by the individual defendants; (ii) violation of constitutional rights by City of Everett; and (iii) negligence.  Complaint (docket no. 1).  Pursuant to defendants'

ORDER - 2

unopposed motion, all claims brought by Willard's brother and the Fourth Amendment and state law claims asserted by Willard's father and mother were dismissed. Order (docket no. 21). The only claims remaining in this action are those of Willard and his estate, for which his father is the personal representative, and the Fourteenth Amendment claim asserted by Willard's father and mother. Defendants have moved for summary judgment in their favor as to these claims.

**Discussion**

A.   **Standard for Summary Judgment**

The Court shall grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). To survive a motion for summary judgment, the adverse party must present "affirmative evidence," which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 257 (1986). "Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Beard v. Banks, 548 U.S. 521, 529 (2006) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

B.   **Negligence**

Willard and his estate have no cognizable claim for negligence. A plaintiff may not base a claim of negligence on an intentional act, like the use of excessive force. Nix v. Bauer, 2007 WL 686506 at *4 (W.D. Wash. Mar. 1, 2007); see Tegman v. Accident &

ORDER - 3

*Med. Investigations, Inc.*, 150 Wn.2d 102, 75 P.3d 497 (2003) ("fault" within the meaning of RCW Chapter 4.22, which encompasses liability for negligence, does not include intentional acts or omissions).  Instead, to maintain an action for negligence, a plaintiff must first demonstrate that the defendant owed the plaintiff a duty of care.  <u>See Honcoop v. Wash.</u>, 111 Wn.2d 182, 188, 759 P.2d 1188 (1988).

In Washington, the public duty doctrine defines the four instances under which a governmental entity may be found to owe a statutory or common law duty to a particular member of the public, namely (i) legislative intent, (ii) failure to enforce, (iii) the rescue doctrine, or (iv) a special relationship.  <u>See Cummins v. Lewis County</u>, 156 Wn.2d 844, 853 & n.7, 133 P.3d 458 (2006).  If one of these four "exceptions" does not apply, then no liability may be imposed for a public officer's negligent conduct, based on the reasoning that a duty was not owed specifically to the individual plaintiff, as opposed to the public in general.  <u>Id.</u> at 852.  The first three "exceptions" have not been asserted.  No applicable regulatory statute has been cited that evidences "a clear legislative intent to identify and protect a particular and circumscribed class of persons," <u>see Honcoop</u>, 111 Wn.2d at 188; no statute has been identified that defendants were responsible for enforcing and failed to enforce despite actual knowledge of a violation thereof, <u>see id.</u> at 190 (citing <u>Bailey v. Town of Forks</u>, 108 Wn.2d 262, 268, 737 P.2d 1257 (1987)); and no allegation has been made that defendants assumed a duty to warn or come to Willard's aid, <u>see Bailey</u>, 108 Wn.2d at 268.

The only exception upon which Willard and his estate might rely is a "special relationship."  To establish a special relationship creating an actionable duty on the part

ORDER - 4

of a governmental entity, a plaintiff must show: (i) the plaintiff had direct contact or privity with a public official, thereby setting the plaintiff apart from the general public; (ii) the public official gave "express assurances" to the plaintiff; and (iii) the plaintiff justifiably relied on such express assurances to his or her detriment. See Cummins, 156 Wn.2d at 854. In this case, the elements of the "special relationship" exception to the public duty doctrine have not been satisfied. No evidence has been presented of any direct contact between Willard and a public official and no proof has been proffered that a public official gave "express assurances" to Willard upon which he could have justifiably relied to his detriment. No basis exists for concluding that the EPD or any of its officers owed Willard a duty specifically and apart from the duty owed to the public in general.

The Washington Supreme Court's recent decision in Robb v. City of Seattle, 176 Wn.2d 427, 295 P.3d 212 (2013), on which plaintiffs rely, does not change this analysis. Although the Robb Court recognized that police misfeasance, as opposed to nonfeasance, could give rise to a duty absent a special relationship, the duty at issue was to control the conduct of a third person so as to prevent him or her from causing harm to another. Id. at 433-39. In this case, no contention is made that the EPD and its officers failed to protect Willard from some third person, and the Robb decision has no applicability. Defendants' motion for summary judgment is GRANTED as to Willard's negligence claim, and such claim is DISMISSED with prejudice.

C.      **Excessive Force**

With respect to Willard's excessive force claim, no contention is made that the officers' defensive use of deadly force after Willard aimed his shot gun at them was improper. Rather, the excessive force claim is premised on alleged violation of the Fourth Amendment in connection with the events preceding Willard's encounter with police. The Ninth Circuit has recognized that when "an officer intentionally or recklessly provokes a violent confrontation, if the provocation is an independent Fourth Amendment violation, he may be held liable for his otherwise defensive use of deadly force." *Billington v. Smith*, 292 F.3d 1177, 1189 (9th Cir. 2002).

In *Billington*, the Ninth Circuit made clear that the Fourth Amendment's reasonableness standard differs from the "reasonable care" owed under tort law, and merely negligent acts do not give rise to constitutional liability. *Id.* at 1190. Thus, a plaintiff cannot use the provocation doctrine to transform into a Fourth Amendment violation an officer's failure to choose a "less intrusive alternative" or poor tactical decision, which resulted in a deadly confrontation that might have otherwise been avoided. *Id.* at 1188-90. Rather, to give rise to an excessive force claim, the provocation must be intentional or reckless and must constitute a violation of the Fourth Amendment, with the events leading up to the use of force judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 1190.

The provocation alleged in this case consists of silently approaching, surveying, and surrounding Willard's residence and then not announcing "police" when ringing the

ORDER - 6

doorbell or knocking on the door.  The underlying theory is that Willard heard noises outside his home, responded to the doorbell or knock with a shot gun, so as to protect himself from any miscreant, and then did not have sufficient time to realize that police were present and/or respond to commands to disarm before being fatally wounded.  In support of the assertion that the police conduct leading up to Willard's exit from the residence violated the Fourth Amendment, plaintiffs rely on knock-and-wait statute, RCW 10.31.040, as interpreted in State v. Coyle, 95 Wn.2d 1, 621 P.2d 1256 (1980), and State v. Richards, 136 Wn.2d 361, 962 P.2d 118 (1998).  The statute provides:

> To make an arrest in criminal actions, the officer may break open any outer or inner door, or windows of a dwelling house or other building, or any other inclosure, if, after notice of his or her office and purpose, he or she be refused admittance.

RCW 10.31.040.

In Coyle, the Washington Supreme Court held that the knock-and-wait statute applies when (i) force is used to obtain entry; and (ii) police enter without valid permission.  95 Wn.2d at 5-6.  To comply with the statute, prior to a nonconsensual entry, police must announce their identity, demand admittance, announce the purpose of their demand, and be explicitly or implicitly denied admittance.  Id. at 6.  But see Richards, 136 Wn.2d at 374-78 (an announcement that officers have a search warrant constitutes an implicit demand for entry, and officers need not thereafter wait for a grant or denial of admission).  The knock-and-wait requirements must be satisfied even if police enter through an open door.  Coyle, 95 Wn.2d at 6.  Washington's knock-and-wait statute is consistent with the less demanding "rule of announcement" developed under 18 U.S.C.

ORDER - 7

§ 3109 and the Fourth Amendment.  See Richards, 136 Wn.2d at 370 (citing United States v. Bustamante-Gamez, 488 F.2d 4 (9th Cir. 1973)).

The knock-and-wait statute does not apply to the circumstances at issue in this case.  EPD officers did not use force to gain entry and did not enter or intend to enter Willard's home when Harney rang the doorbell or knocked on the door.  Rather, in response to the doorbell or knock, Willard opened the door and stepped out onto the front porch.  No officer entered Willard's home before the shooting.  The EPD officers arrived at Willard's home in response to a 911 call concerning a possible burglary.  They took a stealthy approach to the residence to avoid engaging in a violent confrontation with any intruders and/or creating a hostage situation.  Consistent with these goals, Harney did not announce "police" when he rang the doorbell or knocked on the door.  The contention that Willard would not have carried his shot gun across the threshold had he known, prior to opening the door, that the individuals roaming around his house were law enforcement officers presents nothing more than a challenge to the tactical decisions made on the morning in question, and does not establish the type of intentional or reckless provocation and independent violation of the Fourth Amendment that is required to hold defendants liable for use of excessive force.  Defendants' motion for summary judgment is GRANTED as to Willard's Fourth Amendment claim, and such claim is DISMISSED with prejudice.[1]

---

[1] Thus, the Court need not address whether the individual defendants are entitled to qualified immunity.

ORDER - 8

D.     **Fourteenth Amendment**

Although an individual who claims excessive police force was directed at him or her can raise only a Fourth Amendment claim, parents who claim that such use of force resulted in the loss of companionship and society of their child may raise a claim for deprivation of a protected liberty interest under the Fourteenth Amendment. *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991). To prevail on such substantive due process claim, the parents must demonstrate that the officer's conduct "shocks the conscience." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010); *Moreland v. Las Vegas Metro. Police Dept.*, 159 F.3d 365, 372 (9th Cir. 1998). In analyzing whether use of lethal force shocks the conscience, the Court must inquire whether the circumstances made "actual deliberation" by the officer or officers practical. *Wilkinson*, 610 F.3d at 554; *Moreland*, 159 F.3d at 372. If actual deliberation is possible, then an officer's deliberate indifference might suffice to shock the conscience. *Wilkinson*, 610 F.3d at 554. On the other hand, when an officer is forced to make a snap judgment because of an escalating situation, the officer's conduct may be found to shock the conscience only if the officer acts "with a purpose to harm unrelated to legitimate law enforcement objectives." *Id.* Such purpose to harm might be proven by evidence that the officer used force to bully a suspect or to "get even." *Id.*

In this case, after Willard exited his house with a shot gun in hand, the EPD officers had no opportunity to engage in actual deliberation, but rather had to react quickly to the danger posed by Willard. Their decision to fire was not made with a purpose to harm that was unrelated to a legitimate law enforcement objective; rather, they

ORDER - 9

discharged their weapons to protect themselves and their fellow officers.  To the extent Willard's parents assert that the circumstances before Willard stepped onto the front porch made actual deliberation on the part of EPD officers practical, their substantive due process claim still fails.  They present no evidence that EPD officers acted with deliberate indifference or in a manner that might shock the conscience.  Defendants' motion for summary judgment is GRANTED as to the Fourteenth Amendment claim asserted by Willard's parents, and such claim is DISMISSED with prejudice.

### E.     Municipal Liability

A municipality may not be held liable under § 1983 on a respondeat superior theory.  Ulrich v. City & County of San Francisco, 308 F.3d 968, 984 (9th Cir. 2002).  Instead, municipal liability must be premised on one of four theories:  (i) a policy or longstanding practice or custom from which the alleged constitutional violation resulted; (ii) an unconstitutional action by an official with final policy-making authority; (iii) ratification by an official with final policy-making authority of a subordinate's unconstitutional conduct; or (iv) a failure to adequately train employees that amounts to "deliberate indifference" concerning the constitutional right at issue.  See, e.g., Menotti v. City of Seattle, 409 F.3d 1113, 1147 (9th Cir. 2005); see also City of Canton v. Harris, 489 U.S. 378 (1989); Clouthier v. County of Contra Costa, 591 F.3d 1232, 1249-50 (9th Cir. 2010).  The contention made in this case is that City of Everett is liable for an alleged failure to adequately train EPD officers to knock and announce when investigating a possible burglary and for not reprimanding and thereby ratifying the shooting of Willard.  With regard to the latter assertion, no showing has been made that any EPD officer

engaged in unconstitutional conduct, and therefore, City of Everett cannot be liable for ratifying the actions of EPD officers on the morning of November 8, 2008.

To impose liability on a municipal employer for failure to adequately train its employees, a plaintiff must prove that the government's omission amounted to "deliberate indifference" to the right at issue. Clouthier, 591 F.3d at 1249. Deliberate indifference is established when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." Id. (quoting Harris, 489 U.S. at 390). A plaintiff must demonstrate that the failure to train "reflects a 'deliberate' or 'conscious' choice by a municipality." Id. at 1250 (quoting Harris, 489 U.S. at 389). To adopt a lesser standard of fault "would result in *de facto respondeat superior* liability on municipalities," which the United States Supreme Court has consistently rejected, and would force the federal courts to engage in "an endless exercise of second-guessing municipal employee-training programs," a task for which federal courts are "ill suited" and which would "implicate serious questions of federalism." Id. (quoting Harris, 489 U.S. at 392).

Because the knock-and-wait statute does not apply when police respond to the scene of a possible burglary and have no intent to enter the dwelling, but rather hope to draw the suspect out of the residence, any failure to train the officers involved here to knock and announce in such situations cannot amount to deliberate indifference. No showing has been made that any need for more or different training was obvious or that any inadequacy in training was likely to result in the unfortunate shooting death of Dustin

ORDER - 11

Willard.  Defendants' motion for summary judgment is GRANTED as to the allegation of municipal liability, and all claims against City of Everett are DISMISSED with prejudice.

**Conclusion**

For the foregoing reasons, defendants' motion for summary judgment, docket no. 34, is GRANTED, and all of plaintiffs' claims are DISMISSED with prejudice. Defendants' motion to exclude the testimony of plaintiffs' experts D.P. Van Blaricom and Susan Peters, docket no. 43, is STRICKEN as moot.  The Clerk is DIRECTED to enter judgment consistent with this Order and to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 4th day of September, 2013.

*[signature]*

THOMAS S. ZILLY
United States District Judge